UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
DARRELL LECKIE,

                                        Plaintiff,

                      -against-

DEBBIE NAPOLI, R.N. (Provider No. 280), JORDAN          21 Civ. 7212 (PGG)
LAGUIO, M.D (Provider No. 104), KHONDKAR
RAKIB, D.D.S (Provider No. 703), TAMMY HYATT,
RDH, and JOHN-JANE DOE 1-10 NEW YORK
STATE DEPARTMENT OF CORRECTION AND
COMMUNITY SUPERVISION  Medical Providers,
and JOHN-JANE DOE 11-20 NEW YORK STATE
DEPARTMENT      OF      CORRECTION      AND
COMMUNITY SUPERVISION Correction Officers,
"DOE" ADA COMPLIANCE OFFICER; "DOE" IGP
SUPERVISOR,            "DOE"          DEPUTY
SUPERINTENDENT FOR PROGRAMS, "DOE"
DEPUTY         SUPERINTENDENT            FOR
ADMINISTRATION, "DOE" staff members of IGRC,
all defendants individually and in their official
capacities;

                                        Defendants.

------------------------------------------------------------------ x

### MEMORANDUM OF LAW
### IN SUPPORT OF PLAINTIFF'S CROSS MOTION TO CONSOLIDATE AND IN
### OPPOSITION TO DEFENDANTS' MOTION TO DISMISS


                                        Law Office of Katherine E. Smith
                                        Katherine E. Smith
                                        Anna Berezovski
                                        233 Broadway, Ste 900
                                        New York, NY 10279
                                        Attorneys for Plaintiff

## **TABLE OF CONTENTS**

**PROCEDURAL HISTORY**                                                                    **1-2**

**PRELIMINARY STATEMENT**                                                             **2-3**

**STATEMENT OF FACTS**                                                                     **3**

**LEGAL STANDARD**                                                                            **5-7**

**PLAINTIFF'S CROSS MOTION TO CONSOLIDATE**
**POINT I**
**CONSOLIDATION IS APPROPRIATE**                                             **7-10**

**POINT II**
**CONSOLIDATION WILL NOT PREJUDICE THE STATE DEFENDANTS**       **10-13**


**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**POINT I**
**VENUE IN THE SOUTHERN DISTRICT IS PROPER**                       **10-13**

**POINT II**
**PLAINTIFF'S DELIBERATE INDIFFERENCE CLAIMS AGAINST DEFENDANTS NAPOLI,**
**RAKIB, LAGUIO AND HYATT MUST STAND**                                **13-18**

**POINT III**
**DECLARATORY AND INJUNCTIVE RELIEF**                                 **18**

**POINT IV**
**ADA CLAIMS MUST STAND**                                                        **18**

**POINT V**
**THE STATE DEFENDANT ARE NOT ENTITLED TO A QUALIFIED IMMUNITY**        **19**

**POINT VI**
**ELEVENTH AMENDMENT AND STATE LAW CLAIMS**                  **20**

**POINT VII**
**WHETHER DEFENDANTS ACTED WITHIN THE SCOPE OF THEIR EMPLOYMENT IS A**
**JURY QUESTION**                                                                           **20-21**

**CONCLUSION**                                                                                 **21**

## **PROCEDURAL HISTORY**

The instant action is the second complaint brought against the State Defendants. Plaintiff initially brought his First Case against the City of New York and the State Defendants[1] on July 18, 2019, alleging state and federal claims of deliberate indifference to his health and safety, *inter alia*, for the care and treatment that he received while he was in the custody of New York City Department of Corrections ("NYC DOC") and New York State Department of Correction and Community Supervision ("DOCCS") from August 30, 2018, until December 20, 2018. Leckie v. City of New York et al., 19-cv-06719 (PGG)(RWL) (Leckie 1 of "First Case").  The State Defendants in the First Case made a similar motion ("First Motion") to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) in lieu of an Answer. In their First Motion, the State Defendants also claimed that Plaintiff's case should be dismissed for failure to exhaust under the PLRA.

The First Motion was fully briefed on September 28, 2020, and was still pending at the time plaintiff discontinued his claims against the State Defendants on January 31, 2021, pursuant to F.R.C.P. 41(a)(1)(A)(i). At that time, the depositions of the plaintiff, and Defendants Napoli, and Laguio were already held. Significant paper discovery had already taken place including discovery demands and responses, production of medical records, facility records, *Monell* discovery and all duly executed HIPAA authorizations. On March 4, 2022, this Court denied the City Defendants' motion to dismiss plaintiff's claims against them in the First Case.

On August 26, 2021, after the plaintiff was released from custody he filed the instant action ("Second Case") against the State Defendants alleging the causes of action against the State

---

[1] Plaintiff's First Case Darrell Leckie v. City of New York, et al., 19-CV-06719 (PGG) named the same defendendats as the Second Case with the exception of Tammy Hyatt and several Doe Officers including IGP Officer and Supervisor, *inter alia*.

Defendants that are based upon the same transaction and occurrences as the First Case.[2] Specifically, both cases relate to serious physical injuries, including sepsis and hearing loss that the plaintiff sustained as result of the deliberate indifference committed by the City and State defendants from approximately April 24, 2018 until August of 2021, while plaintiff went back and forth between NYC DOC and DOCCS custody.

Plaintiff's Second Case includes claims that arise under the ADA against DOE ADA Compliance Officer, DOE IGP Supervisor, DOE Deputy Superintendent for Programs, DOE Deputy Superintendent for Administration, and DOE staff members of IGRC, including failure to provide reasonable accommodations, disparate treatment on the basis of disability and retaliation in connection with hearing loss that plaintiff sustained as a result of State Defendants' deliberate indifference and failure to intervene.

## PRELIMINARY STATEMENT

Plaintiff respectfully submits this memorandum in support of Plaintiff's cross-motion to consolidate the First Case and the Second Case. Consolidation is appropriate because these cases involve common questions of law or fact and their consolidation would avoid unnecessary costs and delay. Plaintiff also respectfully submits this Memorandum of Law in opposition to Defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants' motion must be denied because 1) venue in the Southern District is proper; 2) plaintiff sufficiently pleaded that Defendants Napoli, Laguio and Hyatt were deliberately indifferent to his serious medical condition; 3) plaintiff only seeks declaratory and injunctive relief to the extent the court

---

[2] The PLRA does not apply to Plaintiff's claims in the Second Case. *Perez v. Westchester Cnty. Dep't of Corrections*, 587 F.3d 143, 154–55 (2d Cir. 2009) (finding that a case is "brought" by a prisoner when the plaintiff is a prisoner at the time the case is filed.).

deems it just and proper; 4) Plaintiff's ADA claims are appropriate as against IGP Officers and Supervisors; 5) there is an issue of fact as to whether qualified immunity would be applicable here; and 6) Plaintiff agrees to claims against the State Defendants in only their official capacity; and 7) whether defendants faceted within the scope of their employment is a fact question for a jury.

## STATEMENT OF FACTS

### First Case

Plaintiff alleges in the Second Amended Complaint ("SAC") of the First Case that soon after being admitted to NYC DOC's custody in April of 2018 he complained of extreme mouth pain in the area of his right jaw. (SAC, ₱21, 22). Eventually, on April 24, 2018, Dr. Matthew, City Defendant, took an x-ray and ordered extraction of the plaintiff's tooth. (SAC, ₱24). However, plaintiff's tooth was never extracted and his numerous complaints of pain were ignored by the City Defendants, including his complaint that he put in writing on or about August 23, 2018. (SAC, ₱₱24-26). On or about August 30, 2018, plaintiff was transferred into the custody of New York State Department of Correction and Community Supervision ("DOCCS").[3] (SAC, ₱27). Plaintiff was then transferred back to City custody on or about September 18, 2018 where he still did not receive any dental treatment from the City. (SAC, ₱28). As a result, Plaintiff became septic and lost his hearing.

### Second Case

Plaintiff alleges in the Complaint of the Second Case that upon transfer to the DOCCS custody on or about August 30, 2018, he continued to complaint to State Defendants Napoli, Rakib, Laguio, and Hyatt, about his extreme mouth and jaw pain (Second Case Complaint ("SCC"), ₱28).

---

[3] On February 2, 2021, Plaintiff voluntarily discontinued all claims against the State Defendants pursuant to F.R.C.P. 41(a)(1)(A)(i).

Specifically, on August 30, 2018, plaintiff advised Defendant Napoli that he had a long history of jaw and mouth pain, but the defendant failed to document this history and the level of his dental pain, and failed to obtain his medical records from NYC DOC. (SCC, ⁋29 & 30). On August 31, 2018, Plaintiff was examined by Defendants Rakib, and Hyatt, who noted that plaintiff must be referred to an oral surgeon for extraction of tooth # 31; however, the referral never took place (SCC, ⁋29 & 30) despite plaintiff's repeated sick calls and complaints of jaw and mouth pain to the State Defendant. (SCC, ⁋36).

On October 12, 2018, Defendant Rakib prescribed Tylenol and Motrin to address plaintiff's complaints of mouth and jaw pain. However, Defendants Rakib and Hyatt failed to refer the plaintiff to an oral surgeon; nearly two (2) months after noting that a tooth extraction was medically necessary (SCC, ⁋39). On October 19, 2018, plaintiff presented to the dental clinic with complaints of high fever, nausea and inability to eat, and was initially treated by Defendant Hyatt, who knew of plaintiff's long history of dental pain, but failed to intervene (SCC, ⁋42). Plaintiff was then seen by Defendant Laguio, who prescribed antibiotics and left the plaintiff unsupervised during the weekend of October 19, 2018, despite the fact that at that time plaintiff's degenerative dental condition was already left untreated for over six (6) month (SCC, ⁋43-46). By Monday, October 22, 2018, plaintiff's condition significantly deteriorated. He had a high fever, his neck became swollen and he was unable to move his jaw. (SCC, ⁋47).

Despite plaintiff's serious condition, State Defendants Rakib, Hyatt, and Laguio did not arrange for a timely urgent care for another twelve (12) hours, prior to plaintiff's transfer to Ellenville Regional Hospital, and then to Westchester Medical Center, where he was admitted for treatment of sepsis, and drainage of abscess from the area of his right jaw (SCC, ⁋48-50). Post

4

operatively, plaintiff was intubated for two (2) days due to acute respiratory failure and pulmonary edema. Plaintiff remained in the hospital for approximately eight (8) days before he was released back into the custody of the DOCCS. (SCC, ₱51-52). On or about December 20, 2018, plaintiff was diagnosed with a permanent hearing loss in his right ear that he sustained as a result of the State Defendants' deliberate indifference to his dental needs. (SCC, ₱53-54).

**LEGAL STANDARD**

A.      Fed. R. Civ. P. 12(b)(6) Legal Standard

"To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Cop. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A "plausible" claim is one "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id</u>.  The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." <u>Erickson v. Pardus</u>, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007).

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. <u>Goldstein v. Pataki</u>, 516 F.3d 50, 56 (2d Cir. 2008), cert. denied, 128 S.Ct. 2964, 171 L.Ed.2d 906 (2008) (quoting <u>Chambers v. Time Warner, Inc</u>., 282 F.3d 147, 152 (2d Cir. 2002)).

B.      Fed. R. Civ. P. 12(b)(1) Legal Standard

Whether the motion to dismiss is made pursuant to Rule 12(b)(1) or 12(b)(6), the court construes the complaint in plaintiff's favor and accepts as true the allegations contained therein. <u>See, e.g., Mazzocchi v. Windsor Owners Corp.</u>, 2013 U.S. Dist. LEXIS 134342, 2013 WL 5295089, at

*5 (S.D.N.Y., Sept. 17, 2013). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); citing Fed. R. Civ. P. 12(b)(1) (finding that a plaintiff's complaint survived Rule 12(b)(1) dismissal where the plaintiff "made a colorable pleading of subject matter jurisdiction upon which the district court could have relied to adjudicate the complaint"). Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 476 (2d Cir. 2006) citing Aurecchione, 426 F.3d at 638.

C.      Fed. R. Civ. P. 12(b)(3) Legal Standard

Under Rule 12(b)(3), a complaint may be dismissed for "improper venue." Fed. R. Civ. P. 12(b)(3). "The legal standard for a motion to dismiss for improper venue is the same as a motion to dismiss for lack of personal jurisdiction." Casville Invs., Ltd. v. Kates, No. 12 Civ. 6968 (RA), 2013 U.S. Dist. LEXIS 95426, 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (internal citation omitted). "When a defendant challenges either the jurisdiction or venue of the court, the plaintiff bears the burden of showing that both are proper." Id. (citing DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001); Savoy Senior Hous. Corp. v. TRBC Ministries, 401 B.R. 589, 596 (S.D.N.Y. 2009)). The court construes all of the plaintiff's allegations as true and resolves all doubts in its favor. Casville, 2013 U.S. Dist. LEXIS 95426, 2013 WL 3465816, at *3 (internal citations omitted).

D.      Fed. R. Civ. P. 12(c) Legal Standard

Courts review Rule 12(c) motions under the same standard as Rule 12(b)(6) motions to dismiss. See Bank of New York v. First Millennium, Inc., 607 F.3d 906, 922 (2d Cir. 2010). "To survive a Rule 12(c) motion, the complaint 'must contain sufficient factual matter, accepted as true,

to state a claim to relief that is plausible on its face.'" Id. (quoting *Hayden v. Peterson*, 594 F.3d 150, 160 (2d Cir. 2010)). The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)). "'Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Harris v .Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009)).

## PLAINTIFF'S CROSS MOTION TO CONSOLIDATE SHOULD BE GRANTED

### ARGUMENT

#### POINT I
#### CONSOLIDATION IS APPROPRIATE

Federal Rule of Civil Procedure 42(a) provides that a court may consolidate "actions before the court" if they "involve a common question of law or fact." Fed. R. Civ. P. 42(a)(2). "Consolidation is warranted where it promotes 'judicial economy' and serves to eliminate 'the waste associated with duplicative discovery and multiple trials, and the danger of inconsistent verdicts.'" KGK Jewelry LLC v. ESDNetwork, Nos. 11 Civ. 9236 (LTS) (RLE), 12 Civ. 9130 (LTS) (RLE), 2014 U.S. Dist. LEXIS 177137, 2014 WL 7333291, at *2 (S.D.N.Y. Dec. 24, 2014) (quoting Johnson v. Celotex Corp., 899 F.2d 1281, 1284 (2d Cir. 1990); and then Internet L. Library, Inc. v. Southridge Cap. Mgmt. LLC, 208 F.R.D. 59, 61 (S.D.N.Y. 2002)). "So long as any confusion or prejudice does not outweigh efficiency concerns, consolidation will generally be appropriate."

Crowe v. JPMorgan Chase & Co., No. 09 Civ. 778 (RWS), No. 08 MDL 1963, 2009 U.S. Dist. LEXIS 107961, 2009 WL 3852381, at *3 (S.D.N.Y. Nov. 18, 2009) (cleaned up) (citations omitted); *see also* Devlin v. Transp. Commc'ns Int'l Union, 175 F.3d 121, 130 (2d Cir. 1999) ("Rule [42(a)] should be prudently employed as a valuable and important tool of judicial administration, invoked to expedite trial and eliminate unnecessary repetition and confusion." (citations and internal quotation marks omitted)). The moving party bears the burden of demonstrating that consolidation is appropriate. CCR Int'l, Inc. v. Elias Grp., LLC, No. 15 Civ. 6563 (RWS), 2018 U.S. Dist. LEXIS 107736, 2018 WL 3135849, at *3 (S.D.N.Y. June 26, 2018).

Here, Leckie No. 2 should be consolidated with Leckie No. 1, both pending before Your Honor, as they both involve common questions of law and facts.  Both cases relate to the plaintiff's dental treatment from April 24, 2018, until December 20, 2018, while plaintiff went back and forth between City DOC and State DOCCS custody. Specifically, in both cases, plaintiff alleges that the City and the State defendants were deliberately indifferent to his medical needs, which resulted in substantial delay of approximately six (6) months, causing severe and permanent injuries.

Contrary to defendants assertion, Plaintiff's claims in the First Case are neither solely against employees of the City of New York nor did they arise while Plaintiff was in the sole custody of the New York City Department of Corrections at Rikers Island. To the contrary; plaintiff's claims against the City Employees involve the lack of treatment by the State Defendants upon plaintiff's transfer to DOCCS on or about August 30, 2018, and overlapping allegations against the City and the State Defendants because the plaintiff went back and forth between DOC and DOCCS custody between August 30, 2018 and December 20, 2018.

In addition, the consolidation will promote judicial economy and avoid the potential for

duplicative discovery and litigation. As previously discussed, both actions involve the same lack of dental treatment over overlapping period of times from April 24, 2018 until December 20, 2018, and consolidation would permit Plaintiff to serve one set of discovery requests and take one deposition for each Defendant instead of expending time and resources on multiple, duplicative discovery requests. Consolidation would also prevent the likelihood of duplicative motions practice, discovery disputes. Critically, consolidation prevents inconsistent rulings.

The Defendants allege in their letter in opposition to plaintiff's letter motion (Dockt # 26) that consolidation is inappropriate because the cases are in completely different discovery postures. This allegation is misleading and is without foundation. Indeed, the cases are in the same discovery posture; no deposition discovery in the First Case occurred after the State Defendants' claims were disconnected due to pending dispositive motion practice. The parties in the First Case conducted extensive discovery involving the State Defendants and the City Defendants. Specifically, the parties in the First Case, deposed the plaintiff, and Defendants Napoli and Rakib. The parties also exchanged substantial discovery involving plaintiff's medical records and documents that relate to treatment of dental conditions at DOC and DOCCS. The State and City defendants jointly participated in all discovery. Plaintiff intends to use this discovery in case both actions are consolidated to avoid waste and promote judicial economy.

Given the above, the plaintiff respectfully requests to consolidate both actions to avoid unnecessary costs or delays and inconsistent rulings. *Smith v City of NY*, 2000 US Dist LEXIS 9956, at *1 [SDNY July 19, 2000, 00 Civ. 5273 (PKL) ("Fed. R. Civ. P. 42(a) empowers district courts to consolidate actions involving common questions of law or fact in order to avoid unnecessary costs or delay.")

## POINT II
## CONSOLIDATION WILL NOT PREJUDICE THE STATE DEFENDANTS

[C]onsolidation is permitted as a matter of convenience and economy in administration," and it "does not merge  the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." Feldman v. Hanley, 49 F.R.D. 48, 50 (S.D.N.Y. 1969) (internal quotation marks omitted) (quoting Johnson v. Manhattan Ry., 289 U.S. 479, 496-97, 53 S. Ct. 721, 77 L. Ed. 1331 (1933)).

In the instant case, consolidation will not prejudice the defendants as they were already part of the First Action and spent time and resources on discovery that plaintiff intends to utilize if both actions are consolidated. The State Defendants also made discovery demands in the First Action that were still outstanding at the time the plaintiff withdrew his complaint, and consolidation of both actions will promote convenience and efficiency in administration of justice.  *See* Darezzo v., 200 Ninth Rest. LLC, Nos. 14 Civ, 9081 (PAE), 14 Civ. 5099 (PAE), 2015 U.S. Dist. LEXIS 4501, 2015 WL 195852, at *1 (S.D.N.Y. Jan. 14, 2015) (granting motion to consolidate for pretrial purposes and reserving determination of whether consolidation of the two actions is also merited for trial until after the close of discovery and the resolution of any summary judgment motions).

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## ARGUMENT

## POINT I
## VENUE IN THE SOUTHERN DISTRICT IS PROPER

Pursuant to 28 U.S.C § 1391, plaintiff can bring a civil action in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the

claim occurred…(3)...any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). In addition, "[f]or the purposes of the venue, state officers 'reside' in the district where they perform their official duties." Rush v. Fischer, 923 F. Supp. 2d 545, 556 (S.D.N.Y. 2013) (citations omitted).

Section 1404(a) of Title 28 of the United States Code provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of section 1404(a) "is to prevent the 'waste of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" Eskofot A/S v. E.I. Du Pont De Nemours & Co., 872 F. Supp. 81, 94 (S.D.N.Y. 1995) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 616, 11 L. Ed. 2d 945, 84 S. Ct. 805 (1964)).

Motions to transfer venue are governed by a two-part test: (1) whether the action to be transferred "might have been brought" in the transferee venue; and (2) whether the balance of convenience and justice favors transfer. *See* American Alliance Ins. Co. v. Sunbeam Corp.,1999 U.S. Dist. LEXIS 713, No. 98 Civ. 4703, 1999 WL 38183, at *3 (S.D.N.Y. Jan. 28, 1999); Gerling American Ins. Co. v. FMC Corp., 1998 U.S. Dist. LEXIS 11080, No. 97 Civ. 6473, 1998 WL 410898, **[*4]** at *2 (S.D.N.Y. July 22, 1998) ("Motions for transfer lie within the broad discretion of the courts and are determined upon notions of convenience and fairness.").

In making this determination, a judge has "considerable discretion in adjudicating a motion for transfer according to an individualized, case-by-case consideration of convenience and fairness." Bionx Implants, Inc. v. Biomet, Inc., 1999 U.S. Dist. LEXIS 8031, No. 99 Civ. 740, 1999 WL 342306, at *3 (S.D.N.Y. May 27, 1999) (quoting In re Cuyahoga Equip. Corp., 980 F.2d 110, 117

11

(2d Cir. 1992)). A non-exclusive list of factors to consider includes:

> (1) the convenience of witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to those sources of proof; (4) the situs of the operative events in issue; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight accorded **[*5]** a plaintiff's choice of forum; and (9) judicial efficiency and the interests of justice.

Ayala-Branch v. Tad Telecom, Inc., 197 F. Supp. 2d 13, 15 (S.D.N.Y. 2002). No individual factor is determinative and a court has discretion to weigh each factor to reach a fair result. *See* Pharmaceutical Resources, Inc. v. Alpharma USPD Inc., 2002 U.S. Dist. LEXIS 8549, No. 02 Civ. 1015, 2002 WL 987299, at *5 (S.D.N.Y. May 13, 2002) (citing Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 560 (S.D.N.Y 2000)).

In the instant case, Southern District is a proper venue because a substantial part of the events (four (4) out of six (6) months delay in the dental treatment) giving rise to the claims of deliberate indifference against the State Defendants took place in SDNY, specifically at Rikers Island, Bronx, New York. Indeed, in the State Defendants' letter communication with the Court they admit that one of the State Defendants actively performs their duties within SDNY.

Moreover, plaintiff's treatment of his injuries occurred within the SDNY. Specifically, Plaintiff was treated by Correctional Health Services at Rikers Island, both before and after he was initially transferred into state custody. In fact, plaintiff's medical treatment for sepsis and other injuries caused by the deliberate indifference of the State Defendants took place within SDNY (Westchester Medical Center, located in Westchester County). Accordingly, Plaintiff intends to call plaintiff's medical providers from the Westchester Medical Center and Correctional Health Services as fact witnesses to plaintiff's injuries. As it would be more difficult to compel these witnesses to

appear in the Northern District, transfer of venue would prejudice Plaintiff.

In addition, at the time of the incident, plaintiff resided within SDNY (Rikers Island, Bronx, New York) when he was within custody of NYC DOC from April of 2018 until August 31, 2018. Thereafter, the plaintiff went back and forth between NYC DOC and DOCCS custody between August 31, 2018 until December 20, 2018. Notably, the State Defendants already exchanged records from the Ulster Correctional Facility in the First Case, and Defendant Napoli and Laguio have already appeared for their remote depositions in that action. Finally, the State Defendants have ties with SDNY because they are routinely providing medical care and treatment to inmates transferred from Rikers Island. Indeed, it was the State Defendant who intentionally transported Plaintiff to Westchester Medical Center within SDNY for his medical treatment while he was within their care, custody, and control. To now claim that this forum is inconvenient, is disingenuous.

Based on the above, this case should remain in SDNY for convenience of the parties and litigants.

<u>**POINT II**</u>
**PLAINTIFF'S DELIBERATE INDIFFERENCE CLAIMS AGAINST DEFENDANTS NAPOLI, RAKIB, LAGUIO AND HYATT MUST STAND**

To state a § 1983 claim for inadequate medical care under the Eighth Amendment, a plaintiff must allege facts showing that correction officials were deliberately indifferent to the plaintiff's serious medical condition. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); <u>Caiozzo v. Koreman</u>, 581 F.3d 63, 69-72 (2d Cir. 2009). Deliberate indifference to a prisoner's medical need is evaluated under a two-pronged test comprising of both objective and subjective components. <u>See</u> <u>Hill v. Curcione</u>, 657 F.3d 116, 122 (2d Cir. 2011). The objective component of this standard requires that the alleged medical need be a "sufficiently serious"

condition that "could result in further significant injury or the unnecessary and wanton infliction of pain." Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000) (internal citations omitted) (finding that such a condition "exists where the failure to treat a prisoner's condition could result in significant further injury or the unnecessary and wanton infliction of pain.").

It is well established that a tooth cavity presents a "serious medical need" within the meaning of our case law because it will degenerate with serious implications if neglected over a period of time. Harrison v. Barkley, 219 F.3d 132 at 137 ("It follows that (1) outright refusal of any treatment for a degenerative condition that tends to cause acute infection and pain if left untreated and (2) imposition of a seriously unreasonable condition on such treatment, both constitute deliberate indifference on the part of prison officials.").

The subjective component requires a prisoner to show that the defendant officials acted with a "sufficiently culpable state of mind" in depriving him of adequate medical treatment. Nielsen v. Rabin, 746 F.3d 58, 63 (2d Cir. 2014) (plaintiff plausibly stated a claim for relief in alleging that a doctor refused to treat him because it was alleged that plaintiff had assaulted a female guard); (internal citations omitted). The subjective prong requires that the defendant "kn[ew] of and disregard[ed] an excessive risk to [the inmate's] health or safety." Caiozzo v. Koreman, 581 F.3d 63, 72 (requiring that the defendant was actually "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and ... also dr[e]w the inference."); Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (finding that"[w]ith deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness.")

A.     <u>**There is no Dispute that Plaintiff's Condition was Sufficiently Serious**</u>

For the purpose of instant motion, defendants assume *arguendo* that plaintiff's condition is sufficiently serious.  Notwithstanding, the amended complaint alleges, with specificity, that plaintiff suffered from a sufficiently serious medical condition that turned into life threatening sepsis when left untreated by the State Defendants. Indeed, while in state custody on or about October 19, 2018, Plaintiff developed a high fever, nausea, and the inability to eat. (<u>See</u> Am Comp., ℙ34). Moreover, plaintiff pleaded that he suffered from sepsis, that required surgery to drain an abscess from his right jaw. (<u>See</u> Am Comp., ℙ37). Post operatively, Plaintiff developed acute respiratory failure and pulmonary edema, and was intubated for two (2) days. (<u>Id</u>. at ℙ38). Plaintiff was thereafter hospitalized in Westchester Medical Center until October 30, 2018, and then was treated at the infirmary until November 5, 2018. (<u>Id</u>. at ℙ39). As a result of the improperly treated tooth infection, claimant sustained permanent hearing loss. (<u>Id</u>. at ℙ40.). Therefore, defendants' motion to dismiss plaintiff's claim for failure to properly plead deliberate indifference should be denied.

B.     <u>**Plaintiff Sufficiently Pleaded that the State Defendants were Deliberately Indifferent**</u>

Here, plaintiff alleges in his Complaint that the State Defendants actually, subjectively, knew of plaintiff's sufficiently serious medical condition and failed to take action. (Complaint, ℙ35). Indeed Plaintiff specifically claims that "...PLAINTIFF continued to complaint to Defendants NAPOLI, LAGUIO, RAKIB, HYATT and the John/Jane Doe Medical Providers and Correction Officers about severe mouth and jaw pain, but his complaints were ignored, and plaintiff was never referred to an oral surgeon for an extraction and/or for treatment of his dental condition." (Complaint, ℙ35). Moreover, by the time Defendants Laguio and Hyatt saw and treated the plaintiff

15

on October 19, 2018, plaintiff's degenerative condition was left untreated for approximately six (6) months and posed an excessive risk to his health and safety. However, the defendants chose to ignore this risk, when they deprived him of adequate urgent care over the weekend of October 19, 2018, and then delayed his treatment yet again when they came back to work on Monday, October 22, 2018 (Complaint, ℙ41-47). There is no dispute that Plaintiff did not receive dental treatment while he was under the care of the State Defendants, which led to severe permanent injuries, including sepsis and hearing loss. (Complaint, ℙ50-51).

Moreover*, contrary to the State Defendants' suggestion, this is not a case of a delayed treatment, or a difference in opinion, and a reasonable jury could find that the plaintiff was refused treatment for a degenerative condition that tends to cause acute infections as it happened in this case. Id; See also Dean v. Coughlin, 623 F. Supp. 392, 402-403 (S.D.N.Y. 1985) (finding a one-year delay in treating a cavity can evidence deliberate indifference on the part of prison officials); Williams v. Scully, 552 F. Supp. 431, 432 (S.D.N.Y. 1982) (finding a material issue of fact as to deliberate indifference after an inmate was made to wait five and a half months for refilling of a cavity, resulting in infection and loss of the tooth). A reasonable jury could also find that refusal of dental treatment by Defendants Napoli, Laguio, and Hayatt amounts to conscious disregard of substantial risk of serious harm given seriousness of plaintiff's medical condition and defendants' medical training. See Charles v. Orange County, 925 F3d 73, 87 [2d Cir 2019]) (noting that "[w]hether the state knew or should have known of the substantial risk of harm to the detainee is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." (citation omitted).

Defendants cite Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003) for a proposition that

this Court should consider the delay in treatment rather than the underlying condition while analyzing the objective and the subjective components of the deliberate indifference claim. However, this proposition is applicable only to cases where  "the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment." Id. at 185. There is no dispute that the State Defendants did not provide any dental treatment despite clear medical indication to the contrary, and their argument that the lack of actions on the part of  Defendants Napoli, Laguio, and Hayatt in plaintiff's do not arise to the level of constitutional violation is without merit and should be denied by this Court.

Indeed, the State Defendants contributed to a six (6) months denial in treatment of a tooth with a gross decay that was subject to extraction. Plaintiff put the State Defendants on notice as soon as he was transferred into their custody - and numerous times thereafter - that he suffered from severe dental pain. However, there is no evidence in the record that the State Defendants made any effort to address plaintiff's complaints. Moreover, there is also no evidence that they referred the plaintiff to a dentist or even obtained his medical records from DOC. On the contrary, the plaintiff pleaded that defendants were deliberately indifferent to his serious medical needs when they consistently ignored his complaints of right jaw pain.

As a result, the plaintiff's life was put in jeopardy, he developed sepsis and had to undergo extensive surgical procedures. Based on the above, the plaintiff had satisfied both the objective and the subjective components required to state a § 1983 claim and plaintiff's deliberate indifference cause of action must survive a motion to dismiss. See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citation and internal quotation marks omitted)(finding that "[a]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an

inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.")

## POINT III
## DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff brings claims for Declaratory and Injunctive Relief only as Court deems such relief just and necessary. Moreover, Plaintiff brings claims against Doe IGP Officers and John/Jane Doe officers, who are certainly *not* medical personnel. To the extent Plaintiff is re-incarcerated during this case, these claims are no longer mooted. Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006) ("[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.")

## POINT IV
## ADA CLAIMS MUST STAND

To state a claim under the ADA, plaintiffs must show "that [i] they are 'qualified individuals' with a disability; [ii] that the defendants are subject to the ADA; and [iii] that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).  Plaintiff brings claims against Doe IGP Officers and John/Jane Doe officers who failed to provide accommodation under the ADA. These individuals are akin to institutional defendants and should be considered. *Walker v City of NY*, 367 F Supp 3d 39, 52 [SDNY 2019] ("Plaintiff's ADA claims against the institutional Defendants for monetary damages remain to be considered.")

## POINT V
## THE STATE DEFENDANT ARE NOT ENTITLED TO A QUALIFIED IMMUNITY

A qualified immunity defense is established if "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Salim v. Proulx, 93 F.3d 86, 89 (2d Cir.1996). The Second Circuit has explained that "[a]n officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances." Lennon v. Miller, 66 F.3d 416, 420–21 (2d Cir.1995).  Defendants are entitled to qualified immunity only if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harrison v. Barkley, 219 F.3d 132, 138 (2d Cir. 2000). Where a right is clearly established, "the defendants may nonetheless establish immunity by showing that reasonable persons in their position would not have understood that their conduct was within the scope of the established prohibition." In re State Police Litig., 88 F.3d 111, 123 (2d Cir. 1996).

In the instant case, the State Defendants' conduct violated the plaintiff's constitutional right when they failed to provide a treatment of a properly diagnosed condition that was progressively degenerative, potentially dangerous, painful, and that could be treated easily and without risk. In addition, it is well settled that consciously disregarding an inmate's legitimate medical needs is not a "mere medical malpractice." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996), and reasonable officials in State Defendants' position could not have believed that their actions did not violate plaintiff's constitutional rights.

Notwithstanding, courts routinely hold that where there are issues of fact - as there are here - the facts must first be resolved by a jury before the Court decides the ultimate legal issue. Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007) (finding that the jury must resolve "any disputed facts that are material to the qualified immunity issue," so that the *court* may make the "ultimate

19

determination of whether the officer's conduct was objectively reasonable ....") (internal citations omitted).

## POINT VI
## ELEVENTH AMENDMENT AND STATE LAW CLAIMS

Plaintiff brings federal claims against the State Defendants in their individual and official capacities for deliberate indifference to his health and safety, *inter alia*, for the care and treatment that he received while he was in the custody of DOCCS from August 30, 2018, until December 20, 2018.  As Plaintiff had agreed in the First Case, Plaintiff agrees to withdraw claims made against the State Defendants within their official capacities only.

## POINT VII
## WHETHER DEFENDANTS ACTED WITHIN THE SCOPE OF THEIR EMPLOYMENT IS A JURY QUESTION

While, N.Y. Correct. Law § 24 shields employees of a state correctional facility from "being called upon to personally answer a state law claim for damages" such protection is not absolute. Indeed, "[t]he legislature has limited its availability to acts or omissions occurring" within the scope of [an officer's] employment and in the discharge of [his or her] duties." Ierardi v. Sisco, 119 F.3d 183, 187 (2d Cir. 1997) *citing* N.Y. Correct. § 24(1). "Because the determination of whether a particular act was within the scope of the servant's employment is so heavily dependent on factual considerations, the question is ordinarily one for the jury." Rounds v. Delaware Lackawanna & Western R. R. Co., 64 N.Y. 129, 137-138 (1876); See McLoughlin v. New York Edison Co., 252 N.Y. 202, 208 (1929); Note, 45 U. of Cin.L.Rev. 235, 236); Zeranti v. United States 167 F.Supp.3d 465 (W.D.N.Y 2016) (submitting issue to jury where plaintiff claimed malpractice/negligence by his Veterans Administration Hospital psychotherapist who engaged in consensual sexual relations with

Plaintiff during treatment and during working hours.) As such, the state law claims asserted against

the State Defendants should be presented to a jury.

## **CONCLUSION**

For all of the foregoing reasons, the Court should deny Defendants' motion to dismiss in its

entirety, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
        March 24, 2022

Respectfully submitted,

_____/s/_____
KATHERINE E. SMITH
ANNA BEREZOVSKI
233 Broadway, Ste. 900
New York, New York 10279
Tel/ Fax: 347-470-3707
ksmith@legalsmithny.com
Attorney for Plaintiff

TO:     Sarande Dedushi **(By ECF and Email)**
        *Counsel for the State Defendants* Assistant
        Attorney General
        New York State Attorney General's Office 28
        Liberty Street
        New York, New York 10005
        (212) 416-8105
        Email: Sarande.Dedushi@ag.ny.gov

        Alejandra Rosa Gil, Esq. **(By ECF and Email)**
        *Attorney for City Defendants*
        Heidell, Pittoni, Murphy and Bach
        81 Main Street
        White Plains, NY 10601
        (914) 559-3100
        Email: agil@hpmb.com